**ELECTRONICALLY FILED**
**COURT OF COMMON PLEAS**
**Tuesday, February 14, 2023 11:23:11 AM**
**CASE NUMBER: 2023 CV 00753   Docket ID: 653134172**
**Mike Foley**
**CLERK OF COURTS MONTGOMERY COUNTY OHIO**

# IN THE COURT OF COMMON PLEAS
## MONTGOMERY COUNTY, OHIO

| | | |
|---|---|---|
| TONYA ANDERS<br>63 Twilight Dr.<br>Fairfield, OH 45014 | )<br>)<br>)<br>) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | )<br>) | |
| v. | )<br>) | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
| VISITING PHYSICIANS ASSOCIATION<br>3033 Kettering Blvd., Ste. 100<br>Moraine, OH 45439 | )<br>)<br>)<br>)<br>) | **JURY DEMAND ENDORSED HEREIN** |
| **Serve also:**<br>VISITING PHYSICIANS<br>ASSOCIATION c/o VPA, P.C. (Stat. Agent)<br>7700 Forsyth Blvd.<br>St. Louis, Missouri 63105 | )<br>)<br>)<br>)<br>)<br>)<br>) | |
| **-and-** | )<br>) | |
| VPA, P.C. f/k/a VISITING PHYSICIANS ASSOCIATION<br>500 Kirts Blvd.<br>Troy, MI 48084 | )<br>)<br>)<br>)<br>) | |
| **Serve also:**<br>VPA, P.C. f/k/a VISITING PHYSICIANS ASSOCIATION c/o<br>CT Corp. System (Stat. Agent)<br>4400 Easton Commons Way, Ste. 125<br>Columbus, OH 43219 | )<br>)<br>)<br>)<br>)<br>)<br>) | |
| Defendants. | )<br>) | |

Plaintiff Tonya Anders, by and through undersigned counsel, as her Complaint against the Defendant, states and avers the following:

## PARTIES

1. Anders is a resident of the city of Fairfield, Butler County, Ohio.

2. Defendant VPA, P.C. f/k/a VISITING PHYSICIANS ASSOCIATION is a foreign corporation for profit that conducts business throughout the state of Ohio.

3. Defendant VISITING PHYSICIANS ASSOCIATION is a fictitious trade name registered by Defendant VPA P.C. f/k/a VISITING PHYSICIANS ASSOCIATION.

4. Defendants VISITING PHYSICIANS ASSOCIATION and VPA, P.C. f/k/a VISITING PHYSICIANS ASSOCIATION are run by the same owner and operate in the same manner. In effect, they are the same company.

5. Defendants VISITING PHYSICIANS ASSOCIATION and VPA, P.C. f/k/a VISITING PHYSICIANS ASSOCIATION are referred to collectively herein as "Visiting Physicians[.]"

6. Visiting Physicians is, and was at all times hereinafter mentioned, Anders' employer within the meaning of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C §2000e, *et seq.*, the Americans with Disabilities Act of 1990 "(ADA"), and Ohio R.C. §4112, *et seq*.

7. Within 300 days of the adverse employment actions described herein, Anders dual-filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and Ohio Civil Rights Commission ("OCRC") against Visiting Physicians, Charge No. 471-2021-02373 ("EEOC Charge").

8. On or about November 17, 2022, the EEOC issued and mailed a Notice of Right to Sue letter to Anders regarding her EEOC Charge.

9. Anders received the Notice of Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 200e-5(f)(1), which had been attached hereto as Plaintiff's Exhibit 1.

10. Anders has filed this Complaint on or before the 90-day deadline set forth in the Notice of Right to Sue letter.

11. Anders has properly exhausted all administrative remedies pursuant to 29 C.R.F. § 1614.407(b).

## JURISDICTION & VENUE

12. All of the material events alleged in this Complaint occurred in or around Montgomery County, Ohio.

13. Therefore, personal jurisdiction is proper over Defendant pursuant to R.C. § 2307.382(A)(1), (2), and/or (3).

14. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331, in that Plaintiff is alleging federal law claims under Title VII and the ADA.

15. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as Plaintiff's state law claims are so closely related to Plaintiff's federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

16. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## FACTS

17. Anders is a former employee of Visiting Physicians.

18. At all times noted herein, Anders was qualified for her position with Visiting Physicians.

19. At all times noted herein, Anders could fully perform the essential functions of her job, with or without a reasonable accommodation.

20. Anders worked for Visiting Physicians as a patient care coordinator from June 10, 2019, until Visiting Physicians unlawfully terminated her employment on or about April 23, 2021.

21. Anders is African American, placing her in a protected class for her race.

22. Anders suffers from hypertension, osteoarthritis, and degenerative joint disease in her knees, placing her in a protected class for disability.

23. Anders was the only African American patient care coordinator at the Visiting Physicians location in Dayton.

24. The Caucasian doctors who worked at the Visiting Physicians location treated Anders unfavorable compared to her Caucasian, abled colleagues.

25. One of the Caucasian doctors refused to speak to Anders, but spoke with Caucasian and abled patient care coordinators.

26. Anders reported this behavior to practice manager Tara Miller and stated that Caucasian doctors were being racist towards her. This action constituted a protected complaint of discrimination.

27. Miller did not take Anders' complaint seriously and subsequently took no actions to protect her.

28. Miller also constantly harassed Anders. For example, Miller told Anders that her work was incorrect and that she was not doing her job well or fast enough.

29. Miller expected Anders to drop everything she was doing the moment Miller called.

30. Miller did not act this way with Caucasian and abled employees, nor expect the same level of response from Caucasian and abled employees.

31. Anders also had issues working through the interactive accommodation process with Miller and Visiting Physicians due to their discriminatory treatment of her.

32. The office restroom at the Visiting Physicians location in Dayton was not handicap accessible.

33. When Anders reported this to Miller, Miller suggested that she just use a different restroom.

34. The only other restroom in the building was far away from the office and located in the lobby.

35. It would take Anders a long time to walk to the restroom and get back. This was not practical if Anders were in a meeting and needed to use the restroom.

36. Additionally, due to her degenerative joint disease, Anders sometimes struggled with walking.

37. Anders informed Miller of these issues and requested a reasonable accommodation in the form of making the office restroom handicap accessible.

38. Visiting Physicians failed to engage in an interactive discussion about reasonable accommodation and denied Anders' request outright.

39. On or around April 22, 2021, Anders was working with a patient who requested to change her brand of insulin due to health insurance issues.

40. Immediately after Anders received this request, she was informed that her car had been hit in the parking lot.

41. Anders went down to the parking lot to take care of her car and handle car insurance matters.

42. When Anders returned, she put in an order to the pharmacy with the patient's insulin request.

43. Anders had forgotten to call the nurse practitioner before she called the pharmacy to make this request.

44. It was not uncommon for patient care coordinators to call the nurse practitioner after calling the pharmacy.

45. Caucasian and abled patient care coordinators were not disciplined for calling the pharmacy before they called the nurse practitioner.

46. Despite this, Visiting Physicians terminated Anders' employment that day, citing her allegedly prescribing medication to a patient.

47. This termination of Anders' employment constituted an adverse employment action.

48. The above facts demonstrate that Visiting Physicians engaged in a pattern and practice of race and disability discrimination.

49. There was a causal connection between Anders's race and Defendants' termination of Anders.

50. There was a causal connection between Anders's disability and Defendants' termination of Anders.

51. Visiting Physicians' purported reason for Anders's employment termination was pretextual.

52. Visiting Physicians actually terminated Anders's employment in in an act of discrimination.

53. As a result of the above, Anders has suffered and will continue to suffer damages.

**COUNT I: DISABILITY DISCRIMINATION UNDER R.C. 4112.01 et *seq.***

54. Anders restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

70. Defendants terminated Anders' employment based her disability.

71. Defendants terminated Anders's employment based her perceived disability.

72. Defendants violated R.C. § 4112.02 when they discharged Anders based on her disability.

73. Defendants violated R.C. § 4112.02 when they discharged Anders based on her perceived disability.

74. Defendants violated R.C. § 4112.02 by discriminating against Anders based on her disabling condition.

75. Defendants violated R.C. § 4112.02 by discriminating against Anders based on her perceived disabling condition.

76. Anders suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq.*

77. As a direct and proximate result of Defendants' conduct, Anders suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT II: DISABILITY DISCRIMINATION UNDER THE ADA

78. Anders restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

79. Anders suffers from hypertension, osteoarthritis, and degenerative joint disease in the knees.

80. Anders is disabled.

81. In the alternative, Visiting Physicians perceived Anders as being disabled.

82. Anders' condition constituted a physical impairment.

83. Anders' condition substantially impaired one or more of her major life activities including working.

84. Visiting Physicians perceived Anders condition to substantially impair one or more of her major life activities including working.

85. Visiting Physicians treated Anders differently than other similarly-situated employees based on her disabling condition.

86. Visiting Physicians treated Anders differently than other similarly-situated employees based on her perceived disabling condition.

87. Anders was unable to use the office restroom, as it was not handicap accessible.

88. When Anders reported this to Miller, she was told to use a different restroom.

89. The different restroom Miller suggested for Anders was located far away from Anders' office, and would require a lot of walking to get there.

90. This other restroom location was not feasible for Anders to use due to her disabilities.

91. When Anders again raised this issue with Miller, Miller responded that Visiting Physician was not going to make their office restroom handicap accessible.

92. On or about April 23, 2021, Defendants terminated Anders' employment without just cause.

93. Alternatively, Defendants' cited reason for Anders' termination was pretext.

94. Defendants violated the ADA when they discharged Anders based on her disability.

95. Defendants violated the ADA when they discharged Anders based on her perceived disability.

96. Defendants violated the ADA by discriminating against Anders based on her disabling condition.

97. Defendants violated the ADA by discriminating against Anders based on her perceived disabling condition.

98. Anders suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to the ADA.

99. As a direct and proximate result of Defendants' conduct, Anders suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

**COUNT III: FAILURE TO ACCOMMODATE UNDER R.C. 4112.01 et *seq.***

100. Anders restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

101. Anders informed Defendants of her disabling condition.

102. Anders requested accommodations from Defendants to assist with her disabilities including making the office restroom handicap accessible, or allowing her more time to use the restroom in the lobby.

103. Anders' requested accommodations were reasonable.

104. There was an accommodation available that would have been effective and would have not posed an undue hardship to Visiting Physicians.

105. Defendants failed to engage in the interactive process of determining whether Anders needed an accommodation.

106. Defendants failed to provide an accommodation.

107. Defendants violated R.C. § 4112.02 by failing to provide Anders a reasonable accommodation.

108. Anders suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq.*

109. As a direct and proximate result of Defendants' conduct, Anders suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT IV: FAILURE TO ACCOMMODATE UNDER THE ADA

110. Anders restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

111. Anders informed Defendants of her disabling condition.

112. Anders requested accommodations from Defendants to assist with her disabilities including making the office restroom handicap accessible, or allowing her more time to use the restroom in the lobby.

113. Anders' requested accommodations were reasonable.

114. There was an accommodation available that would have been effective and would have not posed an undue hardship to Visiting Physicians.

115. Defendants failed to engage in the interactive process of determining whether Anders needed an accommodation.

116. Defendants failed to provide an accommodation.

117. Defendants violated the ADA.

118. As a direct and proximate result of Defendants' conduct, Anders suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT V: RACE DISCRIMINATION UNDER R.C. 4112.01 et *seq.*

119. Anders restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

120. Throughout her employment, Anders was fully competent to perform her essential job duties.

121. Anders is a member of a statutorily-protected class under R.C. § 4112.02(A).

122. Anders was the only African American patient care coordinator at the Dayton location.

123. Visiting Physicians doctors and colleagues treated Anders differently than other similarly situated employees based on her race.

124. Visiting Physicians violated R.C. § 4112.02(A) *et seq.* by discriminating against Anders due to her race.

125. On or April 23, 2021, Visiting Physicians terminated Anders without just cause.

126. Alternatively, Defendants' cited reason for Anders's termination was pretext.

127. At all times material herein, similarly situated Caucasian employees were not terminated without just cause.

128. Defendants terminated Anders based on her race.

129. Anders' race was a determinative factor in Defendants' decisions to take adverse action against Anders.

130. Defendants violated R.C. § 4112.01 *et seq.* when they terminated Anders based on her race.

131. Anders suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq.*

132. As a direct and proximate result of Defendants' conduct, Anders has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT VI: RACE DISCRIMINATION UNDER TITLE VII

133. Anders restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

134. Throughout her employment, Anders was fully competent to perform her essential job duties.

135. Anders is a member of a statutorily-protected class under Title VII.

136. Anders was the only African American patient care coordinator at the Dayton location.

137. Visiting Physicians doctors and colleagues treated Anders differently than other similarly situated employees based on her race.

138. Visiting Physicians violated Title VII by discriminating against Anders due to her race.

139. On or about April 23, 2021, Visiting Physicians terminated Anders without just cause.

140. Alternatively, Defendants' cited reason for Anders's termination was pretext.

141. At all times material herein, similarly situated Caucasian employees were not terminated without just cause.

142. Defendants terminated Anders based on her race.

143. Anders' race was a determinative factor in Defendants' decisions to take multiple adverse actions against Anders.

144. Defendants violated Title VII when they terminated Anders based on her race.

145. Anders suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to Title VII.

146. As a direct and proximate result of Defendants' conduct, Anders has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT VII: RETALIATION

147. Anders restates each and every prior paragraph of this complaint, as if it were fully restated herein.

148. As a result of the Defendants' discriminatory conduct described above, Anders complained about the discrimination she was experiencing.

149. Anders made multiple protected complaints regarding discriminatory behavior from colleagues.

150. Anders also made protected complaints about the lack of accommodations or involvement in the interactive accommodation process from Visiting Physicians.

151. Subsequent to Anders' reporting of discrimination to Defendants, Anders's employment was terminated.

152. Defendants' actions were retaliatory in nature based on Anders's opposition to the unlawful discriminatory conduct.

153. Pursuant to Title VII, the ADA, and R.C. §4112.02(I), it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

154. Anders suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to Title VII, the ADA, and R.C. § 4112.01 et seq.

155. As a direct and proximate result of Defendants' retaliatory discrimination against and termination of Anders, she suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

**DEMAND FOR RELIEF**

WHEREFORE, Anders demands from Defendant the following:

a) Issue a permanent injunction:

   i. Requiring Defendant to abolish discrimination, harassment, and retaliation;

   ii. Requiring allocation of significant funding and trained staff to implement all changes within two years;

   iii. Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

   iv. Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

   v. Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) Issue an order requiring Defendant to expunge her personnel file of all negative documentation;

c) An award against each Defendant for compensatory and monetary damages to compensate Anders for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

e) An award of reasonable attorneys' fees and non-taxable costs for Anders's claims as allowable under law;

f) An award of the taxable costs of this action; and

g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Matthew Bruce*
Matthew G. Bruce (0083769)
    Trial Attorney
Evan R. McFarland (0096953)
**SPITZ, THE EMPLOYEES' LAW FIRM**
Spectrum Office Tower
11260 Chester Road, Suite 825
Cincinnati, Ohio 45246
Phone: (216) 291-0244
Fax: (216) 291-5744
Email: matthew.bruce@spitzlawfirm.com
Email: evan.mcfarland@spitzlawfirm.com

*Attorneys for Plaintiff Tonya Anders*

## JURY DEMAND

Plaintiff Tonya Anders demands a trial by jury by the maximum number of jurors permitted.

*/s/ Matthew Bruce*
Matthew G. Bruce (0083769)
    Trial Attorney
**SPITZ, THE EMPLOYEES' LAW FIRM**